UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF WELLS FARGO COMMERCIAL MORTGAGE TRUST 2016-C34, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2016-C34,<br><br>              Plaintiff,<br><br>   -against-<br><br>JOHN H. HAJJAR,<br><br>              Defendant. | Civil Case No.: 20-cv-3739<br><br>**COMPLAINT** |

Plaintiff, Wilmington Trust, N.A., as Trustee for the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-C34, Commercial Mortgage Pass-Through Certificates Series 2016-C34 ("Plaintiff" or "Lender"), alleges and states as follows:

## NATURE OF THE ACTION

1. This is a breach of contract action against a guarantor of a loan obligation. Despite his contractual obligations under three separate guaranty agreements, Defendant John H. Hajjar has failed to make payment of at least $94,900,993.46, which is presently due and owing to Plaintiff.

## PARTIES

2. Plaintiff is the holder of certain Loan Documents, defined below, that are the subject of this lawsuit.

3. Defendant John H. Hajjar is the guarantor of certain obligations relating to the Loan Documents, as further defined and described below.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5. First, as stated in Paragraph 1 and outlined in Paragraphs 72-73 *infra*, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Second, there is complete diversity of citizenship between Plaintiff and Defendant.

7. Plaintiff is a trust ("The Trust").

8. The Trust is a "real estate mortgage investment conduit" created solely under the Internal Revenue Code, 26 U.S.C. § 860D and whose citizenship is determined by the citizenship of its trustee. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465, 468–69 (S.D.N.Y. 2001). Wilmington Trust, a national banking association ("*Wilmington Trust*"), is the trustee of the Trust ("*Trustee*"). As a national banking association, Wilmington Trust is a citizen of the state where its main office is located, as designated in its articles of association. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006). Wilmington Trust's articles of association designate Delaware as its main office, and therefore the Trustee and Trust are citizens of Delaware.

9. Guarantor is an individual and citizen of the state of New Jersey.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Guarantor consented by contract to venue in this Court.

11. Section 9 of the Recourse Guaranty (defined below) states as follows:

> **9. Applicable Law and Consent to Jurisdiction**. This Guaranty shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of New York. ·Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record in the City and County in which the Property is located or in the Courts of the United States of America located in the District

where the Property is located, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

12. Venue is proper pursuant to Section 9 of the Recourse Guaranty because the Property, as defined below, includes real property located in this District at 103-105 South Bedford Road, Mt. Kisco, New York 10549.

13. Section 9 of the Partial Payment Guaranty (defined below) states as follows:

> **9. Applicable Law and Consent to Jurisdiction**. This Guaranty shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of New York. Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record in the City and County of New York or in the Courts of the United States of America located in the Southern District of New York, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

14. Section 9 of the Lease Guaranty (defined below) states as follows:

> **9. Applicable Law and Consent to Jurisdiction**. This Guaranty shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of New York. Guarantor irrevocably (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Guaranty may be brought in a court of record in the City and County of New York or in the Courts of the United States of America located in the Southern District of New York, (b) consents to the jurisdiction of each such court in any such suit, action or proceeding and (c) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

## GENERAL ALLEGATIONS

### The Loan Agreement and the Notes

15. On or about April 29, 2016, Natixis Real Estate Capital LLC ("Original Lender") made a commercial loan in the original principal amount of $81,500,000.00 (the "Loan") to the following non-party borrowers: HMOB of Jersey City Owner, LLC, HMOB of Oradell Owner, LLC, HMOB of Carlstadt Owner, LLC, HMOB of Hackensack Office Owner, LLC, HMOB of Hackensack Warehouse Owner, LLC, HMOB Of New Brunswick Owner, LLC, HMOB of Roseland Owner, LLC, HMOB of Wayne Owner, LLC, HMOB of Fair Lawn Owner, LLC, HMOB of Glen Rock Owner, LLC, HMOB of Fair Lawn 15-01 Broadway Owner, LLC, HMOB of Mt. Kisco Owner, LLC, and HMOB of Miramar Owner, LLC (collectively, "Borrowers").

16. In connection with the Loan, Borrowers and Original Lender entered into that certain Loan Agreement ("Loan Agreement") dated as of April 29, 2016. The Loan Agreement, among other things, describes the loan transaction and the various security interests securing the Loan. A true and correct copy of the Loan Agreement is attached as **Exhibit A**.

17. To evidence the indebtedness under the Loan, Borrowers executed and delivered to Original Lender that certain Amended and Restated Promissory Note dated April 29, 2016 in the original principal amount of $81,500,000.00 (the "Original Note"). A true and correct copy of the Original Note is attached as **Exhibit B**.

18. On or about April 29, 2016, Borrowers and Original Lender executed that certain Note Splitter and Loan Document Modification Agreement ("Note Splitter Agreement"). A true and correct copy of the Note Splitter Agreement is attached as **Exhibit C**.

19. The Note Splitter Agreement, among other things, split and severed the Original Note into two (2) separate promissory notes: (1) that certain Replacement Promissory Note A-1 dated April 29, 2016 in the original principal amount of $70,000,000.00 ("Note A-1"); and (b)

that certain Replacement Promissory Note A-2 dated April 29, 2016 in the original principal amount of $11,500,000.00 ("<u>Note A-2</u>", and together with Note A-1, the "<u>Notes</u>"). True copies of Note A-1 and Note A-2 are attached as **Exhibits D and E**, respectively.

20. Borrowers executed and delivered the Notes in favor of Original Lender.

21. In relevant parts, and among other things, each of the Notes states as follows: "[t]he Debt shall, without notice, become immediately due and payable at the option of Lender upon the happening of any Event of Default." (Note A-1 § 3; Note A-2 § 3).

22. The Loan Agreement sets forth the Borrowers' Debt payment requirements, including that the Borrowers' obligation to make monthly debt service payments at the Monthly Debt Service Payment Amount, as defined by the Loan Agreement and the payment of late charges, interest, and default interest where applicable. (Loan Agmt. §§ 2.2; 2.3).

23. The Loan Agreement further provides as follows with respect to attorneys' fees and expenses:

> **5.17 Expenses.** Borrower shall reimburse Lender upon receipt of notice for all reasonable out–of–pocket costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with the Loan, including . . . (vii) enforcing or preserving any rights in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, the Loan Documents, the Property, or any other security given for the Loan; . . . [and] (ix) enforcing any obligations of or collecting any payments due from Borrower under any Loan Document or with respect to the Property or in connection with any refinancing or restructuring of the Loan in the nature of a "work–out", or any insolvency or bankruptcy proceedings[.]

(Loan Agmt. § 5.17).

## The Mortgage and Assignment of Rents

24. To secure the payment and performance in full under the Notes and other Loan Documents, Borrowers executed and delivered, among other things: (a) that certain Mortgage,

5

Assignment of Leases and Rents and Security Agreement dated April 29, 2016 executed by HMOB of Oradell Owner, LLC, HMOB of Carlstadt Owner, LLC, HMOB of Hackensack Office Owner, LLC, HMOB of Hackensack Warehouse Owner, LLC, HMOB of New Brunswick Owner, LLC, HMOB of Roseland Owner, LLC, HMOB of Jersey City Owner, LLC, HMOB of Wayne Owner, LLC, HMOB of Fairlawn Owner, LLC, HMOB of Glen Rock Owner, LLC, and HMOB of Fair Lawn 15-01 Broadway Owner, LLC (collectively, the "New Jersey Borrowers") in favor of and delivered to Original Lender (the "New Jersey Mortgages"); (b) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated April 29, 2016 executed by HMOB of Miramar Owner, LLC (the "Florida Borrower") in favor of and delivered to Original Lender (the "Florida Mortgage"); and (c) that certain Amended and Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated April 29, 2016 executed by HMOB of Mt. Kisco Owner, LLC (the "New York Borrower") in favor of and delivered to Original Lender (the "New York Mortgage", and collectively with the New Jersey Mortgages and the Florida Mortgage, the "Mortgages").  True and correct copies of the Mortgages are attached as **Exhibits F-1, F-2, and F-3**.

25. The Mortgages encumber, among other things, thirteen (13) real properties located in New Jersey, New York, and Florida, including real property located at 103-105 South Bedford Road, Mt. Kisco, New York 10549 (each individually a "Property" and, collectively, the "Properties").

26. The Mortgages were duly recorded in the County Clerk's Offices in New Jersey, New York, and Florida covering all thirteen (13) Properties.

27. The Borrowers' obligations are further secured by, among other things: (a) that certain Assignment of Leases and Rents dated as of April 29, 2016, executed by the New Jersey

Borrowers in favor of and delivered to Original Lender (the "New Jersey ALR"); (b) that certain Assignment of Leases and Rents dated as of April 29, 2016, executed by the Florida Borrower in favor of and delivered to Original Lender (the "Florida ALR"); and (c) that certain Assignment of Leases and Rents dated as of April 29, 2016, executed by the New York Borrower in favor of and delivered to Original Lender (the "New York ALR", and collectively with the New Jersey ALR and the Florida ALR, the "Assignments of Leases and Rents"). True and correct copies of the Assignments of Leases and Rents are attached as **Exhibits G-1, G-2, and G-3**.

28. Pursuant to the Assignments of Leases and Rents, Borrowers absolutely and unconditionally assigned to Original Lender all rights, title and interest in and to all present and future Leases and Rents (as each such term is defined in the Assignments of Leases and Rents) arising from the Properties.

29. New York law governs the Mortgages and Assignments of Leases and Rents. (Mortgages § 27; Assignments of Leases and Rents § 12(b)).

30. In relevant part, Section 10(a)(1) of each of the Mortgages provides that:

> Upon the occurrence of any Event of Default, Lender may take such action, without notice or demand, to the extent permitted by law, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, by Lender itself or otherwise, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender: (i) declare the entire Debt to be immediately due and payable . . . .

(Mortgages § 10(b)).

## The Guaranty of Recourse Obligations

31. On or about April 29, 2016, Guarantor agreed to and entered into that certain Guaranty of Recourse Obligations (the "Recourse Guaranty"). A true and correct copy of the Recourse Guaranty is attached as **Exhibit H.**

7

32. New York law governs the Recourse Guaranty. (Recourse Guaranty § 9).

33. In relevant part, and among other things, the Recourse Guaranty provides that Guarantor "hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment (and not merely the collectability) when due of the Guaranteed Obligations." (Recourse Guaranty § 2(a)).

34. Guaranteed Obligations are defined as, in relevant part, "from and after the date that any Springing Recourse Event occurs (including without limitation, as a result of the occurrence of a Sovereign Transfer other than a Permitted Sovereign Transfer), payment of the entire Debt." (Recourse Guaranty §1(b)).

35. In turn, a "Springing Recourse Event" is defined to include: (i) the Borrowers' voluntary filing of a bankruptcy petition; or (ii) the Borrower permitting liens to be filed against secured properties without the lender's consent. (Loan Agmt. §§ 8.1(d), 8.1(g), and 10.1; pp. 10, 19 (stating a "Transfer" includes a "Lien"); Mortgages § 4(a) and (b)).

36. The Recourse Guaranty also provides that: "Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, which may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this [Recourse] Guaranty." (Recourse Guaranty § 16(b)).

## The Partial Payment Guaranty

37. On or about April 29, 2016, Guarantor agreed to and entered into that certain Partial Payment Guaranty (the "Partial Payment Guaranty"). A true and correct copy of the Partial Payment Guaranty is attached as **Exhibit I.**

38. New York Law governs the Partial Payment Guaranty. (Partial Payment Guaranty § 9).

39. In relevant part, the Partial Payment Guaranty provides that:

> Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender the full, prompt and complete payment (and not merely the collectability) of . . . : (i) the principal sum of $8,000,000 under the Note when due in accordance with the Note and the other Loan Documents, whether at stated maturity, upon acceleration or otherwise and at all times thereafter; and (ii) all sums that may hereafter become due and owing by Guarantor to Lender under this Guaranty.

(Partial Payment Guaranty § 2(a)).

40. The Partial Payment Guaranty also provides that: "Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, which may be incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this [Partial Payment] Guaranty." (Partial Payment Guaranty § 16(b)).

### The Lease Guaranty

41. On or about April 29, 2016, Guarantor agreed to and entered into that certain Lease Guaranty (the "<u>Lease Guaranty</u>, and collectively with the Recourse Guaranty and Partial Payment Guaranty, "<u>the Guarantees</u>"). A true and correct copy of the Lease Guaranty is attached as **Exhibit J.**

42. New York Law governs the Lease Guaranty. (Lease Guaranty § 9).

43. In relevant part, the Lease Guaranty provides that:

> Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Lender, at any time after a monetary Default under the Loan Documents, the full, prompt and complete payment of all Rents from Borrower Affiliated Tenant due under Borrower Affiliated Leases into the Clearing Account in accordance with the provisions of Section 3.1 of the Loan Agreement . . . .

(Lease Guaranty § 2(a)).

44. The Lease Guaranty also provides that: "Guarantor hereby agrees to pay all costs, charges and expenses, including reasonable attorneys' fees and disbursements, which may be

incurred by Lender in enforcing the covenants, agreements, obligations and liabilities of Guarantor under this [Lease] Guaranty." (Lease Guaranty § 16(b)).

### Assignments of the Loan Documents to Plaintiff

45. The Note, Loan Agreement, Mortgage, Assignments of Leases and Rents, Guarantees, and all other documents evidencing, securing or relating to the Loan are collectively referred to herein as the "Loan Documents."

46. By virtue of duly effected and recorded assignment documents, Plaintiff became the holder of the Notes, Mortgages, and all other Loan Documents and is entitled to enforce the Recourse Guaranty, Partial Payment Guaranty, and Lease Guaranty.

### Borrowers' and Guarantor's Defaults Under the Loan Documents

47. The Loan Agreement defines an Event of Default as including, among other things:

> **8.1 Events of Default**. An "Event of Default" shall exist with respect to the Loan if any of the following shall occur:
>
> (a) any portion of the Debt is not paid when due or any other amount under Section 3.10(a) is not paid in full when due (unless sufficient funds are available in the relevant Subaccount on the applicable date);
>
> \* \* \*
>
> (d) (i) a Transfer other than a Permitted Transfer occurs; (ii) any covenant contained in Section 5.16 is breached; or (iii) a Sovereign Transfer other than a Permitted Sovereign Transfer occurs;
>
> \* \* \*
>
> (g) [A]ny petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, any Individual Borrower, Borrower Representative or Guarantor, as the case may be; or any proceeding for the dissolution or liquidation of any Individual Borrower, Borrower Representative or Guarantor shall be instituted; provided, however, if such appointment,

>adjudication, petition or proceeding was involuntary and not consented to by any Individual Borrower, Borrower Representative or Guarantor, as the case may be, only upon the same not being discharged, stayed or dismissed within sixty (60) days[.]

(Loan Agmt. § 8.1(a), (d), and (g)).

48. The Loan Agreement further provides that, if an Event of Default occurs under Section 8.1(g) due to the voluntary filing of a bankruptcy petition, "the Debt (including unpaid interest, Default Rate interest, Late Payment Charges, Yield Maintenance Premium and any other amounts owing by Borrower) shall immediately and automatically become due and payable, without notice or demand, and Borrower hereby expressly waives any such notice or demand, anything contained in any Loan Document to the contrary notwithstanding." (Loan Agmt. § 8.2.1).

49. On or around September 2018, non-party Landvscape, Inc. recorded a judgment lien against the Property by virtue of a judgment entered in the Supreme Court of the State of New York, County of Westchester, bearing index number 50725/18 and in the original judgment amount of $25,431.70 (the "Landvscape Judgment Lien").

50. On or around May 2018, non-party Kamco Supply of NJ, LLC recorded a construction lien claim against the Property in the Register's Office of Hudson County, New jersey as Instrument No. 2018-5-5150 and in the amount of $1,425.24 (the "Kamco Construction Lien").

51. On or around May 2019, non-party U.S. Security Associates, Inc. obtained a judgment lien, docketed as judgment number J-044315-2019 in the Superior Court of New Jersey, Bergen County, in the original judgment amount of $93,339.48 plus costs of $290.00 (the "U.S. Security Judgment Lien").

52. On or around December 2019, non-party O.A. Peterson Co. recorded a construction lien against the Property in the Office of the Clerk of Passaic County, New Jersey, as Instrument No. 2019-057774 in the amount of $94.055.18 (the "O.A. Peterson Construction Lien", collectively with the Landyscape Judgment Lien, the Kamco Construction Lien, and the U.S. Security Judgment Lien, the "Liens").

53. Each Lien was an Event of Default under Section 8.1(d) of the Loan Agreement because each Lien represented a Transfer that occurred without Plaintiff's consent.

54. On February 14, 2020, each of the Borrowers filed voluntary petitions under Chapter 11 of the Bankruptcy Code, captioned *In Re: Hajjar Business Holdings, LLC, et al.*, Case No. 20-bk-12465-JKS, pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Case").

55. Borrowers' bankruptcy filing was an Event of Default under Section 8.1(g) of the Loan Agreement.

56. As defaults under the Loan Documents, the voluntary bankruptcy filing and the liens constituted Springing Recourse Events under the Recourse Guaranty and triggered Guarantor's liability under the Recourse Guaranty for the entire Debt.  (Loan Agmt. § 10.1).

57. Borrowers' bankruptcy filing caused the entire Debt to become accelerated and immediately due and payable under the Loan Agreement, and thus triggered Guarantor's liability under the Partial Payment Guaranty for the principal sum of $8,000,000.00 under the Note, as well as all other amounts due and owing under the Partial Payment Guaranty.  (Loan Agmt. § 8.2).

58. In addition, Borrowers have admitted that "[m]ultiple Events of Default (as defined in the Loan Documents) occurred under the Loan Documents resulting from the Owner

Debtors' failure to pay all amounts due thereunder on or before June 5, 2018." (Stipulation of Facts with Respect to Cash Collateral at ¶ 27, filed in the Bankruptcy Case as ECF No. 91) (footnote omitted).

59. As a result of the defaults, all amounts due and owing under the Loan Documents are immediately due and payable.

60. Borrowers have not repaid the amounts due and owing under the Loan Documents.

61. Guarantor has not repaid the amounts due and owing under the Loan Documents.

62. Plaintiff has also incurred substantial attorneys' fees, costs, and other expenses in connection with the Bankruptcy Case.

**Guarantor's Admissions Regarding Non-Payment of Tenant Affiliated Rent**

63. Under the Lease Guaranty, "Guarantor irrevocably, absolutely and unconditionally guarantees to Lender, at any time after a monetary Default under the Loan Documents, the full, prompt and complete payment of all Rents from Borrower Affiliated Tenants due under Borrower Affiliated Leases." (Lease Guaranty § 2(a)).

64. In the Bankruptcy Case, Borrowers submitted documentation reflecting $2,341,232.20 in unpaid rent as of February 2020, pursuant to Leases for the Properties involving Tenants who are owned, operated, controlled, or otherwise affiliated with Borrower.

65. During a meeting of creditors in the Bankruptcy Case in or around March 25, 2020, Guarantor admitted to the non-payment of Tenant Affiliated Rent of $2,341,232.20.

66. Borrowers also submitted filings in the Bankruptcy Case stating that entities owned, in whole or in part indirectly, by Guarantor had failed to pay rent on leased space "in excess of $2.3 million" as of the filing of the Bankruptcy Case. (Stipulation of Facts with Respect to Cash Collateral at ¶ 27 n.6, filed in the Bankruptcy Case as ECF No. 91).

67. The $2,341,232.20 in unpaid Tenant Affiliated Rent represents a Guaranteed Obligation under the Lease Guaranty.

68. Guarantor has not paid the Tenant Affiliated Rent.

**Other Lawsuits Relating To The Borrower, Property, And/Or Loan Documents**

69. Plaintiff has been forced to litigate numerous lawsuits over the last two years relating to the Property (the "Borrower-Related Lawsuits").

70. These Borrower-Related Lawsuits include complaints for foreclosure against Borrowers filed in:

   a. The Superior Court of New Jersey Chancery Division: Bergen County, Docket No. F-019879-19;

   b. The Superior Court of New Jersey Chancery Division: Essex County, Docket No. F-019883-19;

   c. The Superior Court of New Jersey Chancery Division: Hudson County, Docket No. F-019906-19;

   d. The Superior Court of New Jersey Chancery Division: Middlesex County, Docket No. F-019952-19;

   e. The Superior Court of New Jersey Chancery Division: Passaic County, Docket No. F-019926-19;

   f. The Supreme Court of the State of New York, County of Westchester, Index No. 70059/2019; and

   g. The Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Civil Division, Case No. CACE-19-026292.

71. Plaintiff has incurred substantial attorneys' fees, costs, and other expenses in connection with the Borrower-Related Lawsuits.

### The Amounts Due and Owing

72. At least $92,559,761.26 is currently due and owing under the Loan Documents, including the Guarantees, and the amounts due will continue to accrue through the date of a final judgment in this case.

73. As of February 2020, various Borrower Affiliated Tenants have failed to timely pay $2,341,232.20 in rent by pursuant to Borrower Affiliated Leases.

74. The amount of unpaid rent will continue to accrue through the date of final judgment in this case.

### COUNT I

### Breach of Recourse Guaranty against Defendant

75. Plaintiff repleads, realleges, and incorporates herein by reference Paragraphs 1 through 74 as though fully set forth herein.

76. The Recourse Guaranty is a valid and enforceable agreement.

77. Borrowers defaulted under the Loan Documents by, among other things, allowing the Liens and filing a voluntary bankruptcy petition.

78. The Liens and Borrowers' bankruptcy filing constituted Springing Recourse Events under the Recourse Guaranty and triggered Guarantor's liability for the entire Debt.

79. The Debt includes Plaintiff's attorneys' fees, costs, and expenses which have been incurred and continue to be incurred in connection with the Bankruptcy Case and Borrower-Related Lawsuits.

80. Guarantor has not paid the Debt or any of the other amounts due and owing under the Recourse Guaranty.

81. Guarantor has failed to perform his obligations under the Recourse Guaranty.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order:

1. That Plaintiff be awarded the full amount of the Debt (*i.e.*, the amounts currently due under the Loan Documents), plus such other amounts that will continue to accrue through the entry of judgment in this case;

2. That Plaintiff be awarded reasonable attorneys' fees, costs, and expenses;

3. That Plaintiff be awarded its costs of suit; and

4. For such other and further relief as the Court deems just and proper.

## COUNT II

### Breach of the Partial Payment Guaranty against Defendant

82. Plaintiff repleads, realleges, and incorporates herein by reference Paragraphs 1 through 81 as though fully set forth herein.

83. The Partial Payment Guaranty is a valid and enforceable agreement.

84. Borrowers defaulted under the Loan Documents by, among other things, allowing the Liens and filing a voluntary bankruptcy petition.

85. Borrowers' bankruptcy filing resulted in an automatic and immediate acceleration of the Debt and triggered Guarantor's liability for the principal sum of $8,000,000.00 under the Partial Payment Guaranty.

86. Guarantor has not paid the principal sum of $8,000,000.00 as required by the Partial Payment Guaranty, or any of the other amounts due and owing under the Partial Payment Guaranty.

87. Guarantor has failed to perform his obligations under the Partial Payment Guaranty.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order:

1. That Plaintiff be awarded the principal sum of $8,000,000.00 as required by the Partial Payment Guaranty, plus such other amounts that will continue to accrue through the entry of judgment in this case;

2. That Plaintiff be awarded reasonable attorneys' fees, costs, and expenses;

3. That Plaintiff be awarded its costs of suit; and

4. For such other and further relief as the Court deems just and proper.

## COUNT III

### Breach of Lease Guaranty against Defendant

88. Plaintiff repleads, realleges, and incorporates herein by reference Paragraphs 1 through 87, inclusive, as though fully set forth herein.

89. The Lease Guaranty is a valid and enforceable agreement.

90. As of February 2020, various Borrower Affiliated Tenants have failed to timely pay $2,341,232.20 in rent by pursuant to Borrower Affiliated Leases. The amount of unpaid rent will continue to accrue through the date of final judgment in this case.

91. Full, prompt and complete payment of all Rents from Borrower Affiliated Tenants under Borrower Affiliated Leases are Guaranteed Obligations under the Lease Guaranty.

92. Guarantor has not paid the $2,341,232.20 in unpaid rents from Borrower Affiliated Tenants, or any of the other rents or amounts due and owing under the Lease Guaranty.

93. Guarantor has failed to perform his obligations under the Lease Guaranty.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter an order:

1. That Plaintiff be awarded damages in the amount of $2,341,232.20, representing admitted amounts of unpaid rents by Borrower Affiliated Tenants pursuant to Borrower Affiliated Leases as of February 2020.

2. That Plaintiff be awarded damages for all other unpaid rents and amounts that will continue to accrue through the entry of judgment in this case;

3. That Plaintiff be awarded reasonable attorneys' fees, costs, and expenses;

4. That Plaintiff be awarded its costs of suit; and

5. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
May 14, 2020

Respectfully submitted,

/s/ David T. McTaggart
David T. McTaggart
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
Phone: 212.471.1814
Fax: 212.202.4931
dtmctaggart@duanemorris.com

Meagen E. Leary (*Pro Hac Vice forthcoming*)
**DUANE MORRIS LLP**
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Phone: 415.457.3230
Fax: 415.520.0291
meleary@duanemorris.com

Paul E. Chronis (*Pro Hac Vice forthcoming*)
**DUANE MORRIS LLP**
190 South LaSalle Street, Suite 3700
Chicago, IL 60603-3433
Phone: 312.499.6765
Fax: 312.577.0728

pechronis@duanemorris.com

Harry M. Byrne (*Pro Hac Vice forthcoming*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
Phone: 215.979.1136
Fax: 215.689.4925
hmbyrne@duanemorris.com

*Counsel for Plaintiff*